UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| GLOBAL OPTIONS INC., | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : 1:07-cv-00608 (PLF) |
| | : |
| NEIL LIVINGSTONE, | : |
| | : |
| Defendant. | : |
| | : |

NOTICE OF REFILING OF EXHIBIT A TO DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

The Court will please take notice of the re-filing of Exhibit A in support of Defendant's Opposition to Plaintiff's Motion for a Preliminary Injunction. The re-filed exhibit contains a redacted copy of Exhibit 2 to Exhibit A, redacting the bank account numbers and other identifying information from the cancelled checks.

Dated: April 23, 2007            Respectfully Submitted,

                                 HEIDEMAN NUDELMAN
                                  & KALIK P.C.
                                 1146 19th Street, 5th Floor
                                 Washington, DC  20036
                                 Telephone:  202-463-1818
                                 Telefax:  202-463-2999

                                 By:__/s/ *Tracy Reichman Kalik*_____
                                     Richard D. Heideman (No. 377462)
                                     Noel J. Nudelman (No. 449969)
                                     Tracy Reichman Kalik (No. 462055)

**CERTIFICATE OF SERVICE**

I hereby certify that on this the 23rd day of April, 2007 a copy of the forgoing was served via the ECF filing system of the United States District Court for the District of Columbia on counsel for the Defendant:

Brian W. Shaugnessy, Esq.
913 M Street, NW
Suite 101
Washington, DC  20001

                                                      _/s/Tracy Reichman Kalik___
                                                      Tracy Reichman Kalik

# EXHIBIT A

# Declaration of Neil Livingstone

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GLOBAL OPTIONS INC., :
:
   Plaintiff, :
:
          v. : 1:07-cv-00608 (PLF)
:
NEIL LIVINGSTONE, :
:
   Defendant. :
:

## DECLARATION OF NEIL LIVINGSTONE

Comes now the Declarant, Neil Livingstone, and declares under penalty of perjury, based upon his own personal knowledge, as follows:

1. My name is Neil Livingstone. I am the CEO of ExecutiveAction, LLC ("EA"). I have personal knowledge of the facts stated herein.

2. For the past two decades I have worked by advising clients on security related issues including prevention of industrial espionage, internal investigation, protecting intellectual properties, protection of high profile clientele and recovery of hostage and kidnap victims.

3. In 1998, I founded GlobalOptions, LLC as a security and investigations firm in Washington, D.C.

4. In 2002, GlobalOptions, LLC was re-organized into a Delaware corporation, GlobalOptions, Inc. ("GO")

5. I served as an officer of GO until my departure from GO on January 31, 2007.

6. During my tenure at GO, GO became a public company and enjoyed significant growth in revenues and profits.

7. In October, 2006, I met with Harvey Schiller ("Mr. Schiller"), Chairman of GO, in New York City at GO's headquarters.

8. The meeting was also attended by Andrew Kaslow of QuanStar, a former HR Director at a major corporation.

9. At this meeting, Mr. Schiller and I agreed that my Engagement Agreement[1], which expired on Jan. 31, 2007, would not be renewed or extended.

10. This was the culmination of more than a year long deterioration of the relationship between myself and Mr. Schiller over significant differences about the direction and management of GO.

11. During that meeting, I was informed by Mr. Schiller that GO would be in touch with me shortly to work out an appropriate transition.

12. Subsequently, GO's CFO, Jeff Nyweide, communicated with me and advised me that Mort Taubman, the company's outside legal counsel, ("Mr. Taubman") would meet with me to negotiate the transition.

13. I accordingly met with Mr. Taubman. The meetings with GO and Mr. Taubman were most cordial and done without rancor or serious disagreement.

14. At that time, it was understood that in lieu of receiving a severance package and bonus I would proceed to open a new firm in Washington, D.C.

---

[1] My Engagement Agreement is attached to Mr. Schiller's Declaration as Exhibit 1.

15. I believe that it was understood that my new firm would provide the same services that I had provided to clients for decades and which I provided at GO.

16. Mr. Taubman advised me that this was agreeable but cautioned that I could not solicit either employees or clients of GO.

17. I agreed to this restriction, but Mr. Taubman and I spoke candidly about the fact that nothing that GO and I agreed to could preclude a client or employee from soliciting me, since neither a company, nor a professional services firm, can tell a client who it can or cannot hire.

18. During these many discussions, issues such as, but not limited to, the following were discussed and various understandings and agreement were reached: (1) the timing of my departure; (2) the issue a of a public announcement about my departure; (3) my setting up my own firm (EA)[2] which I and others established in 2007; (4) my providing continued services to client's of GO; (5) GO providing services to future clients of EA; (6) which current GO client's that I serviced would continue to be clients of mine at my new company, EA; and (7) our expectation that EA would subcontract and/or refer business to GO.

19. Following my conversations with Mr. Taubman, a letter transition agreement[3] was prepared.

20. Regarding clients, since it was understood that I would continue to offer many of the same services I had before, I agreed that Tom Ondeck, ("Mr.

---

[2] EA is a start-up LLC with less than 10 partners and employees.
[3] The Transition Agreement is attached to Mr. Schiller's Declaration as Exhibit 2.

Ondek") my former deputy and successor at GO, and I would work out which clients would come with me to my new firm and which should remain at GO.

21. Mr. Ondeck and I subsequently did meet and a list was prepared. See Exhibit 1 to this Declaration.

22. One client, Project M, was deliberately left off the list because of sensitivities surrounding the client, and Mr. Ondeck and I agreed that we would continue to work together if the client wanted to continue retaining our services.

23. Pursuant to the Transition Agreement, GO was to have prepared a mutually agreeable press release about my transition and departure from GO. They failed to do that.

24. Therefore I was left in the position of having no ability to advise the public at large of my departure from GO, and many of my contacts (most of whom weren't and had never had been clients of GO) were afforded no opportunity to learn of my departure.

25. In conversations that I had with representatives of GO, I requested that GO draft and issue the promised press release, but to my knowledge this was not done.

26. Accordingly, in light of GO's failure to issue the promised public notification, after more than three months of waiting, I found it necessary to send out my own announcement letter advising of my departure from GO to my Contact List.

27. GO specifically confirmed that my Contact List was my personal rolodex and my property and therefore I could take it with me upon my departure from GO.

28. Cognizant not to solicit clients of GO, in March of 2007, I carefully went through my printed Contact List and by hand made a list for my Executive Assistant, Jill Horowitz, to delineate which contacts should receive one of two personal letters I had drafted[4].

29. The difference in the two letters was the nature of the language used, one being solicitous and the other not. The non-solicitous letter, which did not in anyway offer to provide assistance or support, was sent to anyone who had previously had a relationship with GO.

30. Not only have I not knowingly solicited clients of GO, but in keeping with my promise to subcontract work to GO, in the past three months EA has written checks to GO in the amount of $1,415,000 for subcontracted work that GO performed. See Exhibit 2 to this Declaration.

31. In addition, I recently received a letter from Jeff Nyweide welcoming me to GO's Senior Advisory Board and offering me stock options in GO.

32. If I was not able to operate EA, I would suffer severe hardship. I would be unable to earn a living, and support the few employees that EA had retained. Moreover, if I was not permitted to communicate and serve my contacts over the next 9 months, EA would lose considerable opportunities to solidify its start-up business, which GO knew and agreed that I would establish.

---

[4] The letters are attached to the Declaration of Jill Horowitz as Exhibits 1 and 2

5

33. It was not until the filing of this lawsuit that I became aware that GO believed that I had violated any written or oral understanding with GO that related to the transition and my departure from GO. I have always believed that I have acted consistent to the matters I agreed to with GO.

34. I was never personally served with the Summons, Complaint or Motion for Temporary Restraining Order or Motion for Preliminary Injunction. They were left with an employee of EA while I was away from the office. I have never authorized any employees of EA to receive service of process or to act as my agent to receive legal papers on my behalf.

35. After retaining counsel, on April 13, 2007, I authorized my lawyer, Richard D. Heideman to receive service of the Summons and Complaint of this lawsuit. I understand that his office was served on April 19, 2007.

I declare under the penalty of perjury that the forgoing is true and accurate to the best of my recollection.

Executed on this the 22 day of April, 2007.

Neil Livingstone

# EXHIBIT 1

## Jill Horowitz

**From:** Tom Ondeck
**Sent:** Monday, December 18, 2006 2:28 PM
**To:** Neil Livingstone
**Cc:** Mort Taubman
**Subject:** Continuing Client Coordination

Dear Neil:

Mort suggested that, in the context of the language of your Separation Memorandum regarding clients about which you and I are coordinating regarding continuing services, I list these clients for you (and him). From my standpoint, at present these clients are as follows:

- Zeromax
- Akwa Ibom State
- Hayground Cove
- Motley Rice/Redstone

Best regards,

Tom

# EXHIBIT 2

**Check 1046**

EXECUTIVEACTION LLC
700 NEW HAMPSHIRE AVE. NW #602
WASHINGTON, DC 20037
68-444-560

DATE: March 2, 2007

PAY TO THE ORDER OF: Global Options Inc.    $835,000.00

Eight hundred thirty five thousand dollars and —— No/100 DOLLARS

UNITED BANK
A Subsidiary of United Bankshares, Inc.

FOR _____

Signed: Kevin C. Livingston

---

**Check 1024**

EXECUTIVEACTION LLC
700 NEW HAMPSHIRE AVE. NW #602
WASHINGTON, DC 20037
68-444-560

DATE: Jan 30, 2007

PAY TO THE ORDER OF: Global Options Inc.    $290,000.00

Two hundred ninety thousand dollars and —— No/100 DOLLARS

UNITED BANK
A Subsidiary of United Bankshares, Inc.

FOR _____

Signed: Kevin C. Livingston

---

**Check 1005**

EXECUTIVEACTION LLC
700 NEW HAMPSHIRE AVE. NW #602
WASHINGTON, DC 20037
68-444-560

DATE: Jan 4, 2007

PAY TO THE ORDER OF: Global Options Inc.    $290,000.00

Two hundred ninety thousand dollars and —— No/100 DOLLARS

UNITED BANK
A Subsidiary of United Bankshares, Inc.

FOR _____

Signed: Kevin C. Livingston





